**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| KEEON JONES et al., | : | |
| | : | |
| Plaintiffs, | : | Civil No. 09-4406 (JLL) |
| | : | |
| v. | : | |
| | : | |
| JON CORZINE et al., | : | **O P I N I O N** |
| | : | |
| Defendants. | : | |

---

**LINARES**, District Judge:

This matter comes before the Court upon submission of a civil complaint ("Complaint"), which consists of two parts, a pre-printed form ("Form"), <u>see</u> Docket Entry no. 1, and an entirely handwritten attachment ("Attachment"). <u>See</u> Docket Entry No. 1-3. The Form names, as the plaintiff in his matter, only one person, <u>i.e.</u>, Keeon Jones ("Jones"). <u>See</u> Docket Entry No. 1, at 1 and 4. The Form also names, as defendants in this matter, only two individuals: (a) the former Governor, <u>i.e.</u>, Jon Corzine ("Corzine"); and (b) the former Commissioner of the New Jersey Department of Corrections, <u>i.e.</u>, George Hayman ("Hayman"). <u>See id.</u> at 4 and 5. In no ambiguous terms, the Form clarified that Jones asserted liability of Corzine and Hayman on the grounds of the supervisory positions Corzine and Hayman used to hold. <u>See id.</u> Jones affixed his signature to the last, that is, the seventh page of the Form. <u>See id.</u> at 7.

It appears that the Attachment was intended to take over when the Form ended, since the Attachment begins with the sentence "'Continuation of Page 7' Each Plaintiff[']s Signature of Complaint." Docket Entry No. 1-3, at 1. That sentence, in turn, is followed by twenty signatures (some reduced to readable scripts and others reduced to unreadable scribbles), each accompanied by, seemingly, the signatory's prison identification number. See id. The first signature in the list of these twenty is a repeat of Jones' signature. See id.

The Attachment continues by what appears to be a caption offered in alternative to the one provided in the Form. See id. at 2. This alternative caption lists, as plaintiffs in this matter, the following six persons: (a) Jones (who, for the reasons not entirely clear to this Court, is in named twice, i.e., at the beginning and at the end of the list of the plaintiffs designated in the alternative caption); (b) James Arline ("Arline"); (c) Robert Harris; (d) Eric Cotay ("Cotay"); (e) Ivon Borgella; and (f) Gary Harris ("Harris"). See id.

Both parts of the Complaint arrived accompanied by certain documents seemingly intended to serve as in forma pauperis ("IFP") applications. While twenty persons signed the Attachment and six persons got listed as plaintiffs in the alternative caption, twelve persons submitted their IFP applications. Specifically, the following persons submitted complete IFPs: (a)

2

Jones, see Docket Entry No. 1-1; (b) Ulysse Gagliano
("Gagliano"), see Docket Entry No. 1-6; (c) Derrick Richardson
("Richardson"), see Docket Entry No. 1-8; (d) Cotay, see Docket
Entry No. 1-11; (e) Alrine, see Docket Entry No. 1-12; (f) Kamar
Stokes, see Docket Entry No. 1-13; and (g) Devon Cashes.
See Docket Entry No. 1-14. The applications of the following
persons included affidavits but did not include their prison
account statements: (a) Jose Colon ("Colon"), see Docket Entry
No. 1-4; (b) Fuquan Morgan ("Morgan"), see Docket Entry No. 1-5;
and (c) Adrienne Coleman ("Coleman"). See Docket Entry No. 1-10.
In contrast, the applications of the following individuals
included their prison account statements but omitted to include
their affidavits of poverty, either entirely or by including only
a part of the affidavit: (a) Harris, see Docket Entry No. 1-7;
and (b) Derrell Riddick ("Riddick"). See Docket Entry No. 1-9.
Moreover, IFP applications of Richardson, Morgan, Coleman and
Riddick arrived accompanied with their own individual civil
complaints. See Docket Entries Nos. 1-5, 1-8, 1-9, and 1-10.[1]

The Attachment named the following individuals as Defendants
in this matter: (a) Corzine; (b) Hayman; (c) Larry Glover, with a

---

[1] A simple comparison of the foregoing lists indicates that
certain individuals who submitted their (complete or incomplete)
IFPs were, nonetheless, not listed as plaintiffs in the
alternative caption, while other individuals -- who got listed in
the alternative caption -- did not bother to submit even
incomplete IFPs.

clarification that Glover was the administrator of the Northern State Prison ("NSP"); (d) Bruce Sapp, with a clarification that Sapp was an associate administrator of the NSP; (e) Eric Stokes, with a clarification that Stokes was an associate superintendent of the NSP; (f) Frank Pedatino, with the same clarification as made with regard to Stokes; and (g) Todd Faubert, also with the same clarification. See Docket Entry No. 1-3, at 2.

The Attachment asserted that the draftor(s) of the Complaint self-certified themselves as a class, see id., consisting of "all prisoners on 4(th) wing" of the NSP, id. at 16, and the total number of the members of the class was "about 317." Id. at 17.

The Court's online research of the current housing of the individuals who submitted their complete or incomplete IFPs in this matter indicated that three individuals (namely, Colon, Morgan and Gagliano) were no longer housed at the NSP and, seemingly, were no longer in custody of the New Jersey Department of Corrections. However, recognizing that the Court's online research might yield results different from the situation existing in actuality, the Court finds it warranted to consider Colon, Mornan and Gagliano among plaintiffs in this action. Conversely, it does not appear warranted to qualify as plaintiffs those persons whose signatures were merely scribbled on the first page of the Attachment or merely listed in the alternative caption, but who were not invested enough in this matter to

submit at least an incomplete IFP application. Consequently, for the purposes of this Opinion only, the Court will refers to "Plaintiffs" as the group of twelve individuals consisting of those persons who submitted their complete or incomplete IFPs, i.e., to Jones, Gagliano, Richardson, Cotay, Alrine, Stokes, Cashes, Colon, Morgan, Coleman, Riddick and Harris. The Court will also presume that the Complaint was jointly drafted by all aforesaid Plaintiffs, even though it appears that Jones was the main force behind -- if not the sole author of -- the pleadings.

## I. PLAINTIFFS' ALLEGATIONS

The allegations begin with the section that might be construed as Plaintiffs' attempt to give the Court the history of the NSP or, in alternative, as allegations aiming to assert Defendants' liability. Specifically, Plaintiffs: (a) broadly discuss certain actions undertaken by Defendants or other state officials in response to rise in gang violence; and (b) assert that transfers of certain prisoners were executed as one of these responsive measures, but allege that the transfers were a cover-up for racial discrimination.[2] See Docket Entry No. 1-3, at 9.

---

[2] The rationale of Plaintiffs' reference to racial discrimination is not entirely clear to the Court, since -- among the twelve Plaintiffs in this matter -- there are African-American, Hispanic and non-Hispanic Caucasian individuals. Consequently, if the Court were to presume that their placement in the NSP was based on racially discriminatory motifs, it is unclear which particular protected class Plaintiffs believe was discriminated by Plaintiffs' transfers to / housing at the NSP.

Following this introductory section, the Attachment
continues with Plaintiffs' allegations which are reduced to a
lengthy stream of generalities.  See, e.g., id. at 10 (asserting
that the conditions at the NSP are "oppressive and egregious," or
that the cells used for solitary confinement were "not designed"
for such use).  Moreover, even when Plaintiffs seem to attempt to
provide the Court with facts, these facts are oblique at best.
See, e.g., id. (stating that the prison walls have cracks, and
paint is molded, or asserting that the cells are "humid" and lack
fans or air-conditioners, and that the prison cell windows have
bars, which prevent circulation of air from the outside).[3]
However, these descriptions are silent as to any health injuries
suffered -- or any existing non-speculative imminent threat to
health/life currently experienced -- by Plaintiffs as a result of
these conditions).  Moreover, when Plaintiffs assert that their
conditions of confinement violate their civil rights, they fail
to detail any specific events or specific time frames.  See e.g.,
id. at 11-12 (asserted that the NSP suffers of rodent and insect
infestation, that the noise is excessive, and that the facility
is "toxic," but not stating any specific health injury suffered -
- or currently experienced -- by any specific person, or the

---

[3]  While Plaintiffs seem to assert that their cells are too
hot and too humid, they simultaneously assert that the blankets
and clothing at the NSP are inadequate, in Plaintiffs' opinion,
because unspecified inmates are suffering of "extreme cold."  See
Docket Entry No. 1-3, at 11.

specific cause of that injury, or the time frame of the injury-causing events).[4]

Even when Plaintiffs proceed to the issues that beg for a detailed discussion of individualized underlying facts, the Attachment still provides the Court with nothing but generalities.

For instance, when Plaintiffs assert that they were placed in solitary confinement for "excessive" periods of time, they do not specify the actual length of these periods, and -- when they accompany the same allegations with the statement that the solitary confinement is such that the denial of recreation amounts to violation of Plaintiffs' constitutional rights -- Plaintiffs do not specify whether they suffered any actual health injury (e.g., atrophy of a particular limb) as a result of such alleged lack of recreation, nor do they state who specifically denied their requests for recreational activities. See id. at 12-13. In the same fashion, Plaintiffs assert that the inmates at the NSP suffer skin irritations and rashes as a result of infestation and "toxic environment," but Plaintiffs do not specify the actual nature of these ailments, their time span, the treatment provided (or denied) by the medical personnel of the

---

[4] In addition, Plaintiffs state entirely speculative allegation, e.g., they assert their "information and belief" that the facility suffers of radon, but fail to state any facts upon which they base their belief. See Docket Entry No. 1-3,, at 12.

NSP, etc.  See id. at 13.  More often than not, Plaintiffs merely express their apprehension of speculative future harm that their conditions of confinement might, allegedly, bring.  See id. at 13-14 (asserting that limitations associated with showers might cause spread of diseases, alleging that the inadequacy of toothbrushes might render the process of tooth brushing inadequate in light of the dangers Plaintiffs speculate might be caused by toxins in the water supply, and expressing displeasure with the odor emitted by the clothing that, allegedly, is laundered inadequately.)  The same applies to Plaintiffs' assertions as to their diet: the allegations do not assert any specific health-injuring or health-threatening malnutrition or food poisoning suffered by any specific person, but rather state merely Plaintiffs' generic displeasure with the selection and their guess as to a single prisoner's total daily caloric intake.  See id. at 14.  Analogously, Plaintiffs' state general complaints as to the visitation program at the NSP, its mail system and Plaintiffs' access to phone, without detailing if these limitations affect any specific contacts with counsel with regard to any specific legal matters or merely obstruct Plaintiffs' socialization unrelated to any legal action.  See id. at 15.

Even Plaintiffs' allegations as to denial of due process to inmates upon whom disciplinary sanctions were imposed are stripped of any particularities.  See id.  In sum, Plaintiffs'

claims present nothing but an oblique kaleidoscope of generic statements of displeasure, but not a single specific claim reduced to a statement of what exactly any particular defendant did, the specific date(s) when these actions took place, and what were the specific injuries suffered by any specific plaintiff. In addition, Plaintiffs even undertake to express their displeasure with the NSP officials that Plaintiffs, seemingly, believe the State of New Jersey should feel/express, without clarifying as to how or why Plaintiffs have standing to assert the claims on behalf of the State. See id. at 16.

## II. IFP ASPECT

### A. General Considerations

The Clerk will not file a civil rights complaint unless the person seeking relief pays the entire applicable filing fee in advance or the person applies for and is granted in forma pauperis, status pursuant to 28 U.S.C. § 1915. See Local Civil R. 5.1(f). The filing fee for a civil rights complaint is $350.00. See 28 U.S.C. § 1914(a). If a prisoner seeks permission to file a civil rights complaint in forma pauperis, the Prison Litigation Reform Act ("PLRA") requires the prisoner to file a **complete application.** See 28 U.S.C. § 1915(a)(2). Specifically, under Section 1915, a prisoner seeking to bring a civil action in forma pauperis must submit an affidavit, including a statement of all assets, which states that the

prisoner is unable to pay the fee.  See 28 U.S.C. § 1915(a)(1).
The prisoner also must submit a certified copy of his inmate
trust fund account statement for the six-month period immediately
preceding the filing of his complaint.  See 28 U.S.C.
§ 1915(a)(2).  The prisoner must obtain this certified statement
from the appropriate official of each prison at which he was or
is confined.  See id.; see also Tyson v. Youth Ventures, L.L.C.,
42 Fed. App'x 221 (10th Cir. 2002); Johnson v. United States, 79
Fed. Cl. 769 (2007).

The PLRA further provides that, if the prisoner is granted
permission to file the complaint in forma pauperis, then the
Court is required to assess the $350.00 filing fee against the
prisoner and collect the fee by directing the agency having
custody of the prisoner to deduct installment payments from the
prisoner's prison account equal to 20% of the preceding month's
income credited to the account for each month that the balance of
the account exceeds $10.00.  See 28 U.S.C. § 1915(b).  In
addition, if the prisoner is granted permission to proceed in
forma pauperis, then the PLRA requires this Court to screen the
complaint for dismissal and to dismiss any claim that is
frivolous or malicious, fails to state a claim upon which relief
may be granted, or seeks monetary relief from an defendant who is
immune from such relief.

10

The PLRA also provides that, if a prisoner has, on three or more occasions while incarcerated, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from immune defendants (that is, incurred three "strikes"), then the prisoner may not bring another action in forma pauperis unless he is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).

Here, all Plaintiffs are, allegedly, prisoners. However, only certain Plaintiffs submitted complete IFPs, while the remaining Plaintiffs both failed to pay the filing fee and to submit their complete IFP applications. Moreover, no IFP applications were received from other members of Plaintiffs' self-certified "class," including from some of them whose names were entered in the "alternative" caption provided in the Attachment. Since the Complaint indicates that Plaintiffs (and other members of their self-certified "class") are not in imminent danger of serious physical injury but, rather, the Complaint expresses a generic displeasure with the totality of NSP conditions, grant of emergent IFP unwarranted as to any Plaintiff.

Consequently, even if the Court were to construe the Complaint as individually submitted by each Plaintiff, the Court would not be able to order filing of the Complaint as to those

11

Plaintiffs who submitted incomplete IFP applications: with regard to them, the in forma pauperis status would be denied.[5]  A fortiori, the Court cannot grant IFP status to Plaintiffs collectively, either as joined co-plaintiffs or as a class.

**B.    Collection of Filing Fee and the "Strike" Aspect**

There are two ways to construe the Complaint: (a) as an attempted class action; and (b) as an action sought to be brought by Plaintiffs jointly.  The Court of Appeals for the Third Circuit has not expressly addressed the issue of collection of filing fee in a class action brought by prisoners, but the Court of Appeals has provided district courts with detailed guidance as to this issue within the context of joinder of plaintiffs.

Specifically, in Hagan v. Rogers, 570 F.3d 146 (3d Cir. 2009), the Court of Appeals for the Third Circuit held that in forma pauperis prisoners are not categorically barred from joining as plaintiffs under Rule 20 of the Federal Rules of Civil Procedure.  However, **where the entire $350 filing fee has not been prepaid**, the full $350 filing fee must be assessed against **each** in forma pauperis prisoner co-plaintiff who is permitted to join, i.e., the filing fee should be assessed as though each such prisoner were proceeding individually.  See Hagan, 570 F.3d at 150.  Accordingly, if all Plaintiffs submit complete IFP

---

[5]  Such denial, obviously, would be without prejudice to timely curing the deficiencies of their IFP applications.

12

applications and this matter proceeds past <u>sua</u> <u>sponte</u> dismissal as a joint action of Plaintiffs, **each** Plaintiff would be assessed a full $350 filing fee,[6] and a dismissal of this action as frivolous, malicious, for failure to state a claim, or for asserting a claim against an entity immune from § 1983 suit would be counted as a "strike" against **each** Plaintiff.

While the Court of Appeals did not provide an express clarification as to the mode of assessment of filing fee in a class action brought by prisoners, this Court has no reason to presume that the outcome would be different from the joinder scenario addressed in <u>Hagan</u>. In other words, Plaintiffs' self-certified "class" would be able to proceed IFP only if **all** members of the "class" would duly submit their **complete** IFP applications and, if this matter is actually certified as a class action and it proceeds past <u>sua</u> <u>sponte</u> dismissal, **each** member of the "class" would be assessed a full $350 filing fee,[7] and a dismissal of this action as frivolous, malicious, for failure to state a claim or for asserting a claim against an entity immune from § 1983 suit would be counted as a "strike" against **each** member of the "class."

---

[6] In other words, since there are twelve Plaintiffs, the total fee assesses would be twelve times $350, that is, $4,200.

[7] In other words, since there are, allegedly, 317 members of the "class," the total fee assesses would be 317 times $350, that is, $110,950.

13

Recognizing that Plaintiffs, being pro se litigants, might be unaware of the above-discussed filing fee aspects, the Court finds it warranted to advise Plaintiff of the applicable legal regime and allow each Plaintiff an opportunity to make an informed personal decision as to whether (and how) each Plaintiff wishes to raise his claims.

## III. CLASS ACTION / JOINDER ASPECT

However, even if the issue of filing fee, insufficiency of Plaintiffs' incomplete IFP applications and the risk of "strike" were not considerations in this matter, the Court can neither certify Plaintiffs' "class" nor allow Plaintiffs to proceed as co-plaintiffs.

### A. Plaintiffs' Allegations Do Not Support Certification

A party seeking class certification bears the burden of proving that the proposed class action satisfies the requirements of Federal Rule of Civil Procedure 23. See Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 183-84 (3d Cir. 2001). To meet this burden, Plaintiffs must satisfy the four prerequisites of Rule 23(a) and show that the action can be maintained under at least one of the subsections of Rule 23(b). See id.; see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997). The Court of Appeals has recognized the utility, and often the necessity, of looking beyond the pleadings when determining class certification. See Newton v. Merrill Lynch, Pierce, Fenner &

14

Smith, Inc., 259 F.3d 154, 168-69 (2001) ("In reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action").[8]

### 1. Rule 23(a)

To be certified as a class, plaintiffs must satisfy Federal Rule of Civil Procedure 23(a). Rule 23(a) provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Commonly referred to as numerosity, commonality, typicality, and adequate representation, these four requirements are "meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances." Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994). Both size of class and complexity of litigation should be limited to encourage manageability of class suits. Rule 23(c)(4) permits division of any action into subclasses so as to increase manageability. See Dore v. Kleppe, 522 F.2d 1369,

---

[8] Despite that review, "it is not necessary for the plaintiffs to establish the merits of their case at the class certification stage" and "the substantive allegations of the complaint must be taken as true." Chiang v. Veneman, 385 F.3d 256, 262 (3d Cir. 2004).

reh'g denied, 526 F.2d 697 (5th Cir. 1975).  Rule 23(c)(4) provides that, if "a class [is] divided into subclasses[,] . . . each subclass [is] treated as a class."  Therefore, "[a]ny subclass formed must itself meet all requirements of class action," Avery v. Heckler, 584 F. Supp. 312 (D. Mass. 1984); see also De Gidio v. Perpich, 612 F. Supp. 1383 (D. Minn. 1985), and even if subclassification is appropriate, subclasses cannot be certified unless the party seeking certification can demonstrate that requirements of FRCP 23 are established.  See Pickett v. IBP, Inc., 197 F.R.D. 510 (M.D. Ala. 2000).

Numerosity is the first prerequisite listed in Rule 23(a). "Numerosity requires a finding that the putative class is so numerous that joinder of all members is impracticable." Newton, 259 F.3d at 182; Fed. R. Civ. P. 23(a)(1).  "No single magic number exists satisfying the numerosity requirement." Moskowitz, v. Lopp, 128 F.R.D. 624, 628 (E.D. Pa. 1989).  The Third Cicuit, however, generally approves classes of forty or more, reserving lower number of litigants for joinder actions.  See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).  In the case at bar, Plaintiff's putative class of 317 appears to satisfy the numerosity requirement.  See Weiss v. York Hospital, 745 F.2d 786, 808 (3d Cir. 1984) (clarifying that classes that include hundreds of members suffice for purposes of this prerequisite). By contrast, if the Court were to presume that all other inmates

16

of the 4th Wing of the NSP do not wish to incur the filing fee assessment and/or to risk a "strike," or wish to be excluded from the putative class for any other reason, the class consisting of Plaintiffs only, that is, of twelve members, does not satisfy the numerosity requirement.

The next Rule 23(a) prerequisite is commonality.  To satisfy the commonality requirement, Plaintiffs must show the existence of at least one question of law or fact common to the class.  See Johnston v. HBO Film Mgmt., 265 F.3d 178, 184 (3d Cir. 2001). "Commonality does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named plaintiffs share at least one common question of fact or law with the grievances of the prospective class."  Id. (quoting In re the Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 310 (3d Cir. 1998) (internal quotations omitted)).  "All that is required is that the litigation involve some common questions and that plaintiffs allege harm under the same legal theory."  Baby Neal, 43 F.3d at 58.  "Because the requirement may be satisfied by a single common issue, it is easily met . . . ."  Id. at 56.  It is not necessary that all putative class members share identical claims.  See Hassine v. Jeffes, 846 F.2d 169, 176-177 (3d Cir. 1988).  "Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded."  Baby Neal, 43

17

F.3d at 57. Since the instant Complaint expresses a general displeasure with the conditions at the NSP, and that displeasure appears to be one common issue, the Court finds that this prerequisite is met by Plaintiffs' application with respect to both the putative class and subclass; this finding, however, shall not be construed as the finding that Plaintiffs' pleadings, as to their expression of generic displeasure, satisfy the requirements posed by Rule 8, discussed <u>infra</u>.

Rule 23(a)(3) provides that the typicality requirement is satisfied if the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work for the benefit of the entire class through the pursuit of their own goals. <u>See</u> <u>In re Prudential Ins. Company of America</u>, 148 F.3d 283, 311 (3d Cir. 1998). The typicality test is not overly demanding. <u>See</u> <u>O'Keefe v. Mercedes-Benz USA, LLC</u>, 214 F.R.D. 266, 289 (E.D. Pa. 2003). The typicality requirement may be met despite the existence of factual differences between the claims of the named plaintiffs and the claims of the proposed class. <u>See</u> <u>Eisenberg</u>, 766 F.2d at 786. If "the class representatives . . . present those common issues of law and fact that justify class treatment, thereby tending to assure that the absent class members will be

adequately represented," then Rule 23(a)(3) is satisfied. Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 923 (3d Cir. 1992) (quoting Eisenberg, 766 F.2d at 786). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the class of the class members, and if it is based upon the same legal theory." Id. at 923. However, in the case at bar, the typicality of claims and defenses does not appear to be present with respect to the putative class in view of uniqueness of the legal tests (and corresponding defenses) applicable to violations of civil rights: at the very least, as to the issues of alleged race discrimination, alleged injuries suffered (and medical treatment provided or denied) as a result of asserted insufficient conditions, and alleged denial of due process to persons who were subjected to discipline. Therefore, this Court finds that this prerequisite is not satisfied by Plaintiffs' pleadings. See Beck v. Maximus, Inc., 457 F.3d 291, 300 (3d Cir 2006) (noting that "class certification [is defeated upon showing of] some degree of likelihood [that] a unique defense will play a significant role at trial").

Rule 23 also requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). However, where the class includes members with divergent interests because the time of class membership is

19

a factor, the representatives may not adequately represent the class.  See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 449 (3d Cir. 1977); Miller v. Hygrade Food Prods. Corp., 198 F.R.D. 638 (E.D. Pa. 2001); see also Wetzel v. Liberty Mut., Ins. Co., 508 F.2d 239 (3d Cir. 1975).  In the case at bar, the representative parties include those already released from confinement, those anticipating release and those facing a very extensive and lengthy confinement.  Consequently, the interests of the these three groups are likely to either substantially diverge from one another or have nothing in common.  Therefore, this Court finds that this prerequisite is also not met by Plaintiffs.[9]

---

[9]  In addition to these reasons, there are other considerations cautioning against certification of Plaintiffs' putative class.  For instance, the persons already released cannot be representatives of the class of prisoners.  See In re Fleetboston Fin. Corp. Secs. Litig., 253 F.R.D. 315 (D.N.J. 2008) (class representative cannot be in qualitatively different circumstances than the rest of the class).  Moreover, none of the imprisoned Plaintiffs could act as a "lead plaintiff," since it was long established that "a prisoner proceeding pro se may not seek relief on behalf of his fellow inmates."  Alexander v. New Jersey State Parole Board, 160 Fed. App'x 249, 250 n.1 (3d Cir. 2005) (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant . . . to represent his fellow inmates in a class action")).  The rationale for this prohibition is derivative from the language of Rule 23(a)(4) which requires that the class representative have the capacity to fairly and adequately protect interests of class members, and an inmate, a lay person subject to being transferred to another corrections facility at any time, cannot, by definition, adequately and fairly represent other incarcerated individuals.  See Awala v. N.J. Dep't of Corr., 2005 U.S. Dist. LEXIS 18426 (D.N.J. Aug. 23, 2005), appeal dismissed, 227 Fed. App'x 133 (3d Cir. 2007); see also Laird v. Tatum, 408 U.S. 1 (1972); Valley Forge Christian College v. Am. United for
(continued...)

## 2.  Rule 23(b)

In addition to satisfying Rule 23(a), Plaintiffs must also show that the putative class or subclass falls under at least one of the three subsections of Rule 23(b).  Moreover, since Plaintiffs' putative class seeks money damages, the class must satisfy the requirements of Rule 23(b)(3) regarding the issues of predominance and superiority.[10]  See Grider v. Keystone Health Plan Cent., Inc., 2006 U.S. Dist. LEXIS 93085, at *36 (E.D. Pa. Dec. 21, 2006).  This requirement reads as follows:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition[,] the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

---

[9](...continued)
Separation of Church & State, 454 U.S. 464, 482 (1982); Hummer v. Dalton, 657 F.2d 621, 625-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); accord McNeil v. Guthrie, 945 F.2d 1163, 1164 & nn.1-2 (10th Cir. 1991) (a prisoner lacks standing to raise any claims of others regarding the class action); Booker v. Powers, 2007 U.S. Dist. LEXIS 12349, at *5 (E.D. Cal. Feb. 8, 2007) (same); Ray v. Robertson, 05-2904, 2005 U.S. Dist. LEXIS 46472 (S. Car. Dec. 21, 2005) (R. Bryan Harwell, J.)(discussing non-certificability of a prisoners' class ridden with the problems analogous to those present in Plaintiffs' putative class).

[10]  Class action is less favored where plaintiffs seek monetary damages, because any award of damages requires case-by-case examination of individual claims, a process best suited to individual adjudications rather than class action lawsuits.  See Contawe v. Crescent Heights of Am., Inc., 2004 U.S. Dist. LEXIS 25746 (E.D. Pa. Dec. 21, 2004).

Fed. R. Civ. P. 23(b)(3).

The Rule 23(b)(3) requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification." Newton, 259 F.3d at 187. The predominance requirement of Rule 23(b) is more rigorous than the commonality requirement of Rule 23(a). See McMahon Books, Inc. v. Willow Grove Assocs., 108 F.R.D. 32, 35 (E.D. Pa. 1985). The Supreme Court has warned that, while "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud[, certification of a class should be made with] caution where individual stakes are high and disparities among class members great." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997) (holding that, although a proposed class of asbestos plaintiffs shared the goal of reaching a settlement, the commonalities did not predominate over individual questions of causation regarding each plaintiff's degree of asbestos exposure under different conditions, pre-existing medical conditions, and tobacco use); see also Windham v. Am. Brands, Inc., 565 F.2d 59, 68 (4th Cir. 1977) ("[W]here the issue of damages and impact . . . . requires separate minitrials . . . courts have found that the staggering problems of logistics thus created make the damage aspect of the case predominate, and render the case unmanageable as a class action") (internal citations omitted).

In addition, the requirement that a class action be the superior method of resolving the claims ensures that there is no other available method of handling it which has greater practical advantages. See Fed. R. Civ. P. 23, Advisory Committee Note, 1966 Amendment to 23(b)(3); Johnston, 265 F.3d at 194 ("A class action must represent the best available method for the fair and efficient adjudication of the controversy"). "Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large, and (6) of the defendant. . . . Superiority must also be looked at from the point of view of the [substantive] issues." Katz v. Carte Blanche Corp., 496 F.2d 747, 760 (3d Cir. 1974).

In the case at bar, this Court finds that neither the requirement of predominance nor that of superiority could be met with respect to the putative class in view of the different evidentiary burdens and legal standards associated with the different claims (since it appears unfathomable that every person out of 317 suffered the same rash, same disciplinary process, same phone limitations and even same racial discrimination regardless of the fact that Plaintiffs are of different races/ethnicities), as well as qualitative and quantitative differences in corresponding potential defenses. Consequently, if Plaintiffs' claims proceed past sua sponte dismissal stage,

the resolution of the bulk of the issues would require its own minitrial at both the liability and damages stages.

In light of the aforesaid shortcomings and concerns, the Court finds Plaintiffs' proposed class of 317 -- as well as Plaintiffs' subclass of twelve -- unsuitable for class action and, therefore, denies Plaintiffs' implied request for certification.

### B. Plaintiffs' Allegations Prompt Against Joinder

In Hagan, 570 F.3d 146, the Court of Appeals addressed certain considerations applicable to civil cases in which multiple prisoner-plaintiffs seek to join in one action pursuant to Rule 20.[11]

Rule 20 of the Federal Rules of Civil Procedure provides the following regarding permissive joinder of parties:

> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
>   (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>   (B) any question of law or fact common to all plaintiffs will arise in the action.
> (2) Defendants. Persons ... may be joined in one action as defendants if:
>   (A) any right to relief is asserted against them jointly, severally, or in the alternative

---

[11] "In exercising its discretion [whether to permit joinder], the District Court must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern presented by the plaintiffs and claims before the court." Hagan, 570 F.3d at 157.

> > with respect to or arising out of the same
> > transaction, occurrence, or series of
> > transactions or occurrences; and
>
> (B)  any question of law or fact common to all
>       defendants will arise in the action.

Fed. R. Civ. P. 20(a).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. See Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden v. SCI Camp Hill, 252 Fed. App'x 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

Moreover, Rule 21 of the Federal Rules of Civil Procedure provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Similarly, a district court has broad discretion in deciding whether to sever a party or claim pursuant to Rule 21. Although Rule 21 is most commonly invoked to sever parties improperly joined under Rule 20, "the Rule may also be invoked to prevent prejudice or promote judicial efficiency." Lopez v. City of Irvington, 2008 WL 565776, *2 (D.N.J. 2008); see also Sporia v. Pennsylvania Greyhound Lines, Inc., 143 F.2d 105 (3d Cir. 1944) (not limiting Rule 21 severance to cases of misjoinder); Wyndham Assoc. v. Bintliff, 398 F.2d 614 (2d Cir.) (same, citing Sporia), cert. denied, 393 U.S. 977

(1968); <u>Rohr v. Metropolitan Ins. & Cas. Co.</u>, 2007 WL 163037
(E.D. La. Jan. 17, 2007) (court may also consider whether jury
confusion would result from the volume of evidence if the
plaintiffs were joined); 4 James Wm. Moore et al., <u>Moore's
Federal Practice</u> § 21.02(1) (3d ed. 2007) (courts may issue
severance orders under Rule 21, even in the absence of misjoinder
and non-joinder of parties, "to construct a case for the
efficient administration of justice").

Specific factors to be considered in determining whether
severance is warranted include: "(1) whether the issues sought to
be tried separately are significantly different from one another,
(2) whether the separable issues require the testimony of
different witnesses and different documentary proof, (3) whether
the party opposing the severance will be prejudiced if it is
granted, and (4) whether the party requesting severance will be
prejudiced if it is not granted." <u>German v. Federal Home Loan
Mortgage Corp.</u>, 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995).

In addition, a district court has the inherent power "'to
control the disposition of the causes on its docket with economy
of time and effort for itself, for counsel, and for litigants.'"
<u>United States v. Colomb</u>, 419 F.3d 292, 299 (5th Cir. 2005)
(quoting <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254 (1936)). "A
court's inherent power to manage its caseload, control its
docket, and regulate the conduct of attorneys before it, provides

authority to fashion tools that aid the court in getting on with the business of deciding cases." Eash v. Riggins Trucking, Inc., 757 F.2d 557, 567 (3d Cir. 1985).

Here, the Complaint comprises numerous separate lawsuits, stitched together. While, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) (footnote omitted), "[i]n making a joinder decision, the district court is guided by the underlying purpose of joinder, which is to 'promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits.'" Swan, 293 F.3d at 1253 (quoting Alexander v. Fulton County, Georgia, 207 F.3d 1303, 1323 (11th Cir. 2000)). "[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1652 (3d ed. 2009) (citations omitted); see also Chavez v. Illinois State Police, 251 F.3d 612, 632 (7th Cir. 2001) (a district court's discretion with respect to joinder "allows a trial court to consider, in addition to the requirements of Rule 20, 'other relevant factors in a case in order to determine whether the permissive joinder of

a party will comport with the principles of fundamental fairness'" (citations omitted)).

In this matter, the panoply of various health injuries that allegedly plagued Plaintiffs, due process violations that allegedly occurred during Plaintiffs' disciplinary hearings, Plaintiffs' inherently different racial discrimination claims, etc., suggest that a joinder of all these claims would not foster the objectives of the Rule; rather, it is likely to result in undue prejudice, unwarranted expense and/or unnecessary delay. Simply put, the claims vaguely sketched in the Complaint do not appear appropriate for joinder,[12] cf. Pope v. Miller, Civil No. 07-0284, 2007 WL 2427978 (W.D. Okla. Aug. 21, 2007) (not appropriate to join access-to-courts claims and Eighth Amendment medical-care and conditions-of-confinement claims): proceeding with multiple, separate litigation for each Plaintiff under the same cause number would be distracting at best -- and costly,

---

[12] Moreover, Title 42 Section 1997e(a) provides that, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion of administrative remedies by one prisoner does not meet the exhaustion requirement for multiple prisoner plaintiffs seeking to join in one action; joinder may not be appropriate where a separate determination is required as to whether each co-plaintiff has complied with the exhaustion requirement. See, e.g., Lilly v. Ozmint, Civil No. 07-1932, 2007 WL 2022190, *2 (D.S.C. July 11, 2007); Worthen v. Oklahoma Dept. of Corrections, Civil No. 07-0687, 2007 WL 4563665, *3 (W.D. Okla. Dec. 7, 2007), Report and Recommendation adopted in pertinent part, 2007 WL 4563644 (W.D. Okla. Dec. 20, 2007).

confusing, and grossly inefficient at worst.  See Johnson-Bey v. Indiana Department of Corrections, Civil No. 09-0249, 2009 WL 1691150 (N.D. Ind. June 16, 2009); Steward v. Mississippi, Civil No. 07-0184, 2007 WL 4375210 (S.D. Miss. Dec. 12, 2007).

Thus, even if the Court construes the Complaint as an implied application for joinder of Plaintiffs, such application must be denied.[13]  In light of the foregoing, the Court will reserve the instant matter for Plaintiff Jones and will direct the Clerk to open a new and separate individual matter for each of the remaining eleven Plaintiffs.  The Court will also allow Jones and each remaining Plaintiff an opportunity to submit an individual amended complaint.[14]

---

[13]  In the event Plaintiffs proceed with their individual actions and file their amended complaints, the Court might revisit the issue and consider consolidation of these matters.

[14]  This measure is undertaken so: (a) no Plaintiff  would be obligated to file an amended complaint if that Plaintiff decides that such submission is not in his best interests (that decision will incur no penalty, filing fee assessment or a "strike"); and (b) in the event such amended complaint is submitted and duly relates to the allegations stated in the instant Complaint (in accordance with the requirements of Rule 15), the date of filing of such amended complaint will be deemed -- for the purposes of the statute of limitations analysis, if it becomes relevant -- the date of Plaintiffs' submission of the instant Complaint to Plaintiffs' prison officials for mailing to the Court.  The Court, however, stresses that Plaintiffs who failed to submit their complete IFP applications together with the instant Complaint will be **obligated** to submit their complete IFP applications together with their amended complaints in the event they elect to submit such amended pleadings.

**IV. PLEADING REQUIREMENTS: FACTUAL SPECIFICITY REQUIRED BY RULE 8, SPECIFICITY AND RESPONDEAT SUPERIOR CLAIMS, AND LACK OF STANDING TO SUE (JUS TERTII AND ON BEHALF OF THE STATE)**

In light of the Court's decision to initiate new matters for each Plaintiff and to allow Plaintiffs an opportunity to submit amended complaints, the Court finds it appropriate to advise Plaintiffs of: (a) their pleading obligations; and (b) which claims they have standing to raise.

**A.  Pleading Requirements Under Rule 8**

As noted supra, the PLRA, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous,[15] malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the

---

[15]  A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint as "frivolous" is an objective one.  See Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

plaintiff. <u>See Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007)
(following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), and <u>Haines
v. Kerner</u>, 404 U.S. 519, 520-21 (1972)); <u>see also United States
v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  Thus, the Court must
"accept as true all of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff." <u>Morse v. Lower
Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court
need not, however, credit a <u>pro se</u> plaintiff's "bald assertions"
or "legal conclusions." <u>Id.</u>

Recently, the Supreme Court further clarified the standard
for summary dismissal in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937
(2009).  The issue before the Supreme Court was whether <u>Iqbal</u>'s
civil rights complaint adequately alleged defendants' personal
involvement in discriminatory decisions regarding Iqbal's
treatment during detention at the Metropolitan Detention Center.
The Court examined Rule 8(a)(2) of the Federal Rules of Civil
Procedure which provides that a complaint must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2).  Citing <u>Bell
Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the
proposition that "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do,'" <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting

Twombly, 550 U.S. at 555), the Supreme Court identified two
working principles underlying the failure to state a claim
standard:

> First, the tenet that a court must accept as true all
> of the allegations contained in a complaint is
> inapplicable to legal conclusions.  Threadbare
> recitals of the elements of a cause of action,
> supported by mere conclusory statements, do not
> suffice . . . .  Rule 8 . . . does not unlock the
> doors of discovery for a plaintiff armed with nothing
> more than conclusions.  Second, only a complaint that
> states a plausible claim for relief survives a motion
> to dismiss.  Determining whether a complaint states a
> plausible claim for relief will . . . be a
> context-specific task that requires the reviewing
> court to draw on its judicial experience and common
> sense.  But where the well-pleaded facts do not permit
> the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n] that the pleader is entitled to relief."
> Fed. R. Civ. P. 8(a)(2).

Iqbal, 129 S. Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court . . . can choose to begin by identifying
> pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of
> truth. While legal conclusions can provide the
> framework of a complaint, they must be supported by
> factual allegations.

Id. at 1950.

Thus, to prevent a summary dismissal, civil complaints must
now allege "sufficient factual matter" to show that a claim is
facially plausible.  This "allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in

Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint is plausible.  See id. at 1949-50; see also Twombly, 550 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that applied to federal complaints before Twombly.[16]  See Fowler, 578 F.3d 203.

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler, 578 F.3d 203 (citations omitted).

---

[16] Under Conley, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Under this "no set of facts" standard, a complaint could effectively survive [dismissal] so long as it contained a bare recitation of the claim's legal elements.

Here, Plaintiffs' Complaint, consisting of generalities, fails to meet the requirements of Rule 8. Plaintiffs' amended complaints, if submitted, are expected to cure this deficiency by stating, in no ambiguous terms, the facts of the events that underlie each Plaintiff's claims, i.e., which Defendant did what and when, and what were the exact injuries that were suffered by the particular Plaintiff as a result of the Defendant's aforesaid acts.

**B.  Respondeat Superior Claims**

In the instant Complaint, Plaintiffs' allegations against each and every Defendant are based on the position held by the Defendant and/or the Defendant's alleged "knowledge" about the violations asserted by Plaintiffs. Such claims are facially insufficient.

The Iqbal Court clarified that a government official sued in his/her individual capacity for alleged constitutionally tortious behavior cannot be held liable on a respondeat superior theory or on the basis of some general link to allegedly responsible individuals or actions. See Iqbal, 129 S. Ct. at 1948-49 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior . . . . [A] plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution. . . . [P]urpose rather

34

than knowledge is required to impose [constitutional] liability on . . . an official charged with violations arising from his or her superintendent responsibilities"); accord, e.g., Richards v. Pennsylvania, 196 Fed. App'x 82, 85 (3d Cir. 2006) (the court, in Section 1983 action alleging excessive force in arrest, agreed with a magistrate judge that plaintiff's "failure to allege personal involvement on the part of defendant [who was the deputy warden] proved fatal to [plaintiff's] claims"); Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) ("[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" in order to be liable) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)); Johnstone v. United States, 980 F. Supp. 148, 151-52 (E.D. Pa. 1997) (court sua sponte dismissed claims against government official because "there is no indication" that the officer "had any personal involvement in the alleged constitutional deprivations," and plaintiff therefore could not "prove any set of facts that would entitle him to relief against [the officer]"). Consequently, Plaintiffs' assertions that Defendant held certain supervisory positions and/or had knowledge of the alleged wrongs are insufficient, since Plaintiffs failed to assert facts showing purposeful personal involvement by each Defendant. See Iqbal, 129 S. Ct. at 1948-49.

35

Therefore, in the event any Plaintiff elects to submit an amended complaint, that particular Plaintiff is expected to assert the facts showing personal purposeful involvement by each Defendants named by that Plaintiff.

### C. **Standing to Sue**

Finally, the Court, taking notice of Plaintiffs' apparent interest in raising claims on behalf of other inmates or on behalf of the State, finds it warranted to provide Plaintiffs with relevant legal guidance.

Under the "next friend" doctrine, standing is allowed to a third person so this third person could file and pursue a claim in court on behalf of someone who is unable to do so on his or her own.  The doctrine dates back to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case in controversy" requirement set forth in the Article III of Constitution.  See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990).

The Whitmore Court set out two requirements that should be met by the one seeking to qualify for "next friend" standing: (1) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [he] seeks to litigate" (and it has been further suggested that a "'next friend' must have some significant relationship with the real party in interest"; and (2) "the 'next friend' must provide an adequate explanation--such

36

as inaccessibility, mental incompetence, or other disability--why
the real party in interest cannot appear on his own behalf to
prosecute the action." Id. at 163-64.  The burden is on the
"next friend" to justify his/her status and, thereby, to obtain
the jurisdiction of the federal courts. See id. at 164.

In view of these requirements, this Court cannot recognize
any Plaintiff as a "next friend" of unspecified other inmates at
the NSP: the Court cannot satisfy even the first prong of the
Whitmore test since the Court has no information as to what is
Plaintiffs' relationship to these unspecified inmates and/or
whether Plaintiffs are "truly dedicated to the best interests" of
these unspecified imprisoned individuals.  Moreover, the Court
has no evidence verifying mental incompetence of these
unspecified inmates and their inability to vindicate their legal
rights without Plaintiffs' assistance.  Therefore, this Court
finds that the second prong of the Whitmore test is also
unsatisfied, and expressly advises all Plaintiffs that, in the
event they elect to file their amended complaints, such
complaints should be *individual* applications, detailing facts and
claims **specific to each** Plaintiff, and that Plaintiff **only**.[17]

_____

[17] The same prohibition applies to claims that Plaintiffs
seemingly wish to bring on behalf of the State: since the State
of New Jersey was the allegedly injured/defrauded/contractually
wronged party (and the State in no way designated Plaintiffs to
litigate its alleged claims on its behalf), Plaintiffs have no
standing to bring such claims.  See Anza v. Ideal Steel Supply
(continued...)

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' putative class will not be certified, and joinder of Plaintiffs will not be allowed. The instant matter, Civil Action No. 09-4406, will be reserved for Plaintiff Jones, and the Clerk will be directed to open new and separate individual matters for each of the eleven remaining Plaintiffs.  Each Plaintiff will be allowed an opportunity to submit his amended complaint stating that Plaintiff's individual claims and detailing the underlying facts.  Plaintiffs who failed to submit their complete in forma pauperis forms, i.e., Colon, Morgan, Coleman, Harris, and Riddick, will be directed to submit such forms together with their amended complaints in the event they elect to submit amended pleadings.

An appropriate Order accompanies this Opinion.


  /s/ Jose L. Linares
  **JOSE L. LINARES**
  **United States District Judge**


Dated:    5/13/10


--------

[17](...continued)
Corp., 547 U.S. 451 (2006).